UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FARIBA G.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

CASE NO. 2:21-CV-1391-DWC

ORDER AFFIRMING DECISION TO DENY BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial of Plaintiff's applications for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Rule MJR 13, the parties have consented to proceed before United States Magistrate Judge Christel.

## BACKGROUND

Plaintiff filed a Title XVI application for Supplemental Security Income Benefits on August 11, 2015, alleging she became disabled at age 35. AR 237-38. Plaintiff alleged that she could not work due to depression, anxiety, borderline personality disorder, obsessive compulsive disorder, kidney pain, chest pain, back pain, and headaches. AR 698. Her

application was denied initially and on reconsideration. AR 84; 98. She requested a hearing, at which she appeared and testified that she immigrated to the United States from Iran, has never had any earnings here, and lives on TANIF benefits and Section 8 housing. AR 969-70.

The Administrative Law Judge (ALJ) issued an unfavorable decision on February 22, 2018. AR 29. After the Appeals Council denied her request for review Plaintiff filed a Complaint with this Court, which then issued an Order on November 15, 2019 reversing and remanding for further proceedings. AR 812-19. On remand, a different ALJ conduced a new hearing, further developed the record, and again found Plaintiff was not disabled. AR 690-715, 724, 1050-1811. The Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

## THE ALJ's FINDINGS

The ALJ found Plaintiff to have the following sever impairments: spinal disorder (degenerative disc disease); headaches; obesity; affective disorder; anxiety disorder; personality disorder; somatoform disorder; and posttraumatic stress disorder (PTSD). AR 695.

The ALJ assessed Plaintiff with the residual functional capacity (RFC) to perform light work as defined in 20 CFR 416.967(b), limited by no more than occasional climbing of ramps or stairs; never climbing ladders, ropes, or scaffolds; frequent balancing but only occasionally stooping, kneeling, crouching, and crawling; the need to avoid concentrated exposure to excessive vibrations and workplace hazards such as working with dangerous machinery or working at unprotected heights; simple, routine tasks, in a routine work environment, with infrequent changes and only simple work-related decisions and instructions; only superficial interaction with coworkers (i.e., no supervision of other employees and no teamwork or problem

1  solving projects with other employees); and no more than incidental interaction with the general
2  public (i.e., interaction with the general public is not a required part of the job). AR 698.
3         The VE testified that a person with Plaintiff's age, education, work experience and RFC
4  would be able to perform the requirements of representative occupations such as production
5  assembler (DOT 706.687-010, light, SVP 2, 59,000 jobs nationwide), assembler, electrical
6  accessories I (DOT 729.687-010, light, SVP 2, 38,000 jobs nationwide), and bottle packer (DOT
7  920.685-026, light, SVP 2, 19,000 jobs nationwide). AR 715. Accordingly, the ALJ found
8  Plaintiff was not disabled. *Id*.

## STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the Commissioner's decision must be affirmed if it is supported by substantial evidence and free of harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009). The U.S. Supreme Court describes it as "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotations omitted).

///

///

## DISCUSSION

Plaintiff challenges the ALJ's assessment of the physical functioning opinions of Ray Smith, MD, and Aline Sengchannavong, DO, as well as the mental functioning opinions of Gerald Cavenee, PhD; Kathleen Andersen, MD; Anya Zimberoff, PsyD; and Lakew Adnew, DNP.[1]

The Commissioner disagrees, and encourages this Court to look at the ALJ's full decision, in which she was "tasked with considering approximately 11 opinions about [Plaintiff's] physical functioning and 14 opinions about [her] mental functioning," and ultimately based her non-disability finding upon substantial evidence. Dkt. 14 at 2.

The ALJ must[2] provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

---

[1] The ALJ addressed the evidence in subject-matter groupings, so the Court will do the same.

[2] In 2017, the Commissioner revised its regulations to eliminate the hierarchy of medical opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, for claims filed on or after March 27, 2017, the Commissioner "will not defer or give any specific evidentiary weight … to any medical opinion(s) … including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). However, because Plaintiff's case was filed in 2015 the "old regulations" apply.

I. <u>Ray Smith, MD and Aline Sengchannavong, DO</u>

Plaintiff contends the ALJ erred in assessing the opinions of Dr. Ray Smith (Smith) and Dr. Aline Sengchannavong (Sengchannavong).

In 2020 Smith performed a consultative examination of Plaintiff and opined that she could (1) stand/walk less than an hour per day, (2) sit less than two hours per day, and (3) only occasionally lift or carry five pounds. AR 1345. Later in 2020 and again in 2021 Sengchannavong opined that Plaintiff was limited to sedentary/ less than sedentary work of no more than 20 hours per week, that she could only sit or stand for 10 minutes at a time, could not raise her arms out front or above her head, and that she would miss more than two days of work per month due to her physical and mental conditions. AR 1048, 1359, 1363.

The ALJ rejected both opinions because they were not entirely consistent with Plaintiff's imaging studies of her lumbar and thoracic spine which revealed no more than mild degeneration according to two medical sources who did not endorse disability. AR 396-407, 705, 707, 1585, 1597). The ALJ further noted that clinical examinations revealed no acute distress, 5/5 motor strength, intact sensation, and normal gait. AR 501, 506, 653, 1048, 1345, 1358, 1361, 1613, 1633. The ALJ also found both Smith and Sengchannavong's opinions to be internally inconsistent (AR 1342, 1362, 1382, 1401, 1408, 1424), leading the ALJ to conclude they were not based upon objective evidence, but upon Plaintiff's unreliable subjective reporting, discussed further below.

Regarding Smith's March 2020 opinion, in particular, the ALJ concluded that it was not supported by his own examination findings, which did indicate tenderness over the sternocleidomastoid muscles and the lower lumbar area, reeducated range of motion of the lumbar spine, and difficulty squatting, but otherwise showed Plaintiff had a normal examination,

including full range of motion and intact sensation in her upper and lower extremities, a non-antalgic gait, the ability to heal and toe walk without assistance, negative Romberg's test and straight leg-raising tests, and 5/5 motor strength. AR 708. Thus, the ALJ concluded that Smith relied "heavily on [Plaintiff's] subjective allegations of unremitting back pain over the past decade … despite his own acknowledgement that the etiology of these symptoms [was] unclear." *Id*.

Similarly, the ALJ stated that Sengchannavong's opinions were not fully supported by her contemporaneous treatment records. The ALJ noted that Plaintiff retained full flexion, extension, and bilateral lateral flexion in her lumbar spine, normal gait, and no acute distress. AR 708. The ALJ further found that Sengchannavong found Plaintiff could stand up without pain or difficulty and had no spinous process tenderness notwithstanding some hypertonic muscles in her back. *Id*. Thus the ALJ concluded that Sengchannavong's own findings did not support the opinion that Plaintiff had severe manipulative limitations. AR 709. Moreover, the ALJ found Sengchannavong's opinion was in conflict with Smith's opinion, discussed above. *Id*.

Plaintiff argues that the ALJ substituted her judgment for Smith's. Dkt. 13 at 4-5. In fact the ALJ deferred to findings in a consultative evaluation of Smith's treatment notes made by another physician, among others, that Smith's opinion was not supported by his own exam findings. AR 833, 839.

Next, Plaintiff characterizes Sengchannavong as "Plaintiff's long time primary care physician" and argues Sengchannavong "had ample opportunity to become familiar with the Plaintiff's impairments …." Dkt. 13 at 9-10. However, Sengchannavong's own notes indicate she had seen Plaintiff monthly for less than a year at the time she issued her opinion, and that many appointments had been conducted remotely. AR 1358. Moreover, while Sengchannavong

does reference "degenerative changes in [Plaintiff's] spine" she opines that the actual cause of Plaintiff's back pain is "multifactorial", explaining, "Per my extensive medical chart review, [Plaintiff's] chronic back pain has been a recurrent issue for the past several years, for which [sic] she attributes to a 'botched epidural' almost 15 years ago, years of physical labor as a child back home in Iran, and her large breasts." *Id*. The Court does not find any merit to Plaintiff's contention that this opinion is based upon objective evidence, given Sengchannavong expressly states that it is based upon Plaintiff's self-reporting.

Finally, Plaintiff claims that since Sengchannavong "expressed no concerns that the Plaintiff was less than credible" her finding that Plaintiff could work part-time was not inconsistent with Plaintiff attending cosmetology school three days a week. Dkt. 13 at 10-11. Yet, the ALJ did properly express concern regarding Plaintiff's credibility, and all medical opinions that credited it, including Smith and Sengchannavong's. AR 702, 707, 732-38, 741, 744, 1244; *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)(finding the ALJ's adverse credibility determination supported a limited rejection of a medical opinion primarily based upon the applicant's subjective reporting).

While Plaintiff urges this Court's to conclude a prior decision by this Court remanding for further proceedings foreclosed the use of Plaintiff's attendance at cosmetology school and acquisition of a driver's license as reason to discredit her subjective reporting, it did not. Dkt. 13 at 13. In fact, this Court previously stated:

> The Court also finds the ALJ erred in rejecting Dr. Cavanee's opinions as inconsistent with plaintiff's activities i.e. studying for beauty school and getting a driver's license. There is nothing showing what plaintiff actually did regarding beauty school and plaintiff testified that she did not complete the school. Tr. 59.

\* \* \*

> The ALJ also provides no discussion about how or why getting a drivers' license diminishes Dr. Cavenee's diagnosis or opinions. There is nothing facially inconsistent with getting a license and the doctor's opinion plaintiff has numerous marked limitations.

AR 819.

The ALJ decision presently before this Court remedies these issues by providing great detail regarding the activities Plaintiff performed at cosmetology school as well as a robust discussion explaining why she found studying for and passing the driver's test, as well as some of Plaintiff's other achievements,[3] were inconsistent with the degree of limitation Plaintiff reported to medical providers. Specifically, the ALJ wrote:

> The claimant's physical and mental allegations are not fully consistent with her activities. For instance, from August 2018 through September 2019, the claimant enrolled in a cosmetology program at Gene Juarez. Three days out of the week, she would drive from her home to the school at 7:30AM. The claimant then spent the next 11 hours, from 8AM to 7PM, at the school. She testified that, for approximately the first 4 months, she was in class the entire day. During the next 9 months, she would attend class from 8:00AM to 2:00PM, after which she would have clients from 2PM until 7:00PM, providing a variety of cosmetology services, including haircuts, permanent weaves, hair coloring, and styling. On some days, she would spend less time in class and more time providing services to clients. The claimant successfully graduated from the Gene Juarez program in September 2019 (16F13; 24F187; Hearing) and she subsequently studied, took, and passed the state board examination to obtain her cosmetology license. Although the claimant testified at the hearing that she had to take multiple breaks and would lie down during the days that she was in school, she has provided no evidence, such as a statement from her instructors, to corroborate her testimony. Moreover, her testimony is not substantiated by the treatment records in 2018 and 2019, which reveal no reports from the claimant about any physical or mental problems interfering with her ability to attend class or complete the tasks assigned to her by her teachers (See 24F; 25F).
>
> Rather, her ability to graduate from the program indicates that, despite her longstanding physical and mental conditions, she was able to persist through an 11-hour day. This required her to sit for multiple hours when she was in the classroom and stand for multiple hours when she was working with clients. Her work with

---

[3] According to Plaintiff, "The same analysis would be applicable to passing a citizenship test and taking a trip to Iran. No matter how stressful, it is not comparable to an SGA work setting as Dr. Cavanee was asked to assume in assessing the Plaintiff." Dkt. 13 at 14.

clients also required extensive handling and fingering because she had to use scissors, curlers, and other hairstyling equipment. From a mental standpoint, the claimant had to satisfactorily carry out the demands from her customers and to interact appropriately with fellow students, instructors, and clients. According to the vocational expert, her graduation from the Gene Juarez Cosmetology School and her passing the state board examinations qualified her to work as a cosmetologist, which is a skilled job, with a SVP of 6.

The claimant's allegations are also not fully consistent with her other activities. For example, in July 2016, she reported that she had learned how to drive and that she had successfully passed her driver's license test (7F16). In June 2019, she revealed that she had passed her citizenship test (16F19), which she took in February 2019 (16F25). Her ability to study for and pass her driver's licensing and citizenship tests is further evidence that she retains greater cognitive functioning than she has reported.

Additionally, after she obtained her citizenship and graduated from cosmetology school, the claimant then traveled to Iran to see her parents and family in December 2019 (24F174-175). This trip required her to check in at the airport, stand in a security line, go through customs, and sit on a plane with strangers surrounding her for many hours. She therefore had to exhibit appropriate behavior in the crowded airport terminal and on board the airplane. AR 707-08. It bears noting that the ALJ pointed to additional evidence that undermined Plaintiff's credibility, such as evidence of a "disability conviction"[4], "symptom magnification"[5] and "other discrepancies"[6].

---

[4] The ALJ wrote, "The claimant has evidence of disability conviction. For example, in April 2018, Dr. Desai reported that the claimant "gives the impression that I can fix her disability issues and is pushing me to call her attorney … She showed me disability decision of rejection. She asks me to fix this. I cannot do this so simply" (24F269). In September 2018, Dr. Desai stated, "I do not think she has a disability and this ppw [sic] was filled out but she refused to accept this and was adamant that she is disabled. Very passive aggressive and insistent. This appt took 30 minutes. Regardless, I decided to wait until I could see some objective test results from x-ray and PT" (24F237). In December 2018, Dr. Desai reported that the claimant "wants to claim disability and I had initiated this application for the pt [sic]," but he "did not feel that she was significantly dysfunctionally [sic] disabled" (24F221). The above evidence detracts from the reliability of the claimant's self-reported symptoms/limitations." AR 703.

[5] One of many examples of "symptom magnification" provided by the ALJ states, "In September 2015, Dr. Marshall reported that the claimant initially denied any ability to perform the requested aspects of the evaluation, but when "informed that should she not complete this examination, she would just have to return to have her examination completed . . . She suddenly began cooperating, but still with limited effort." Dr. Marshall also noted that the claimant "became hysterical when the reflex hammer was taken up for use stating that it reminded her of being abused" (4F7)." AR 704.

[6] The ALJ gave many examples of "other discrepancies," such as "In February 2016, the claimant told Dr. Cavanee that she had "no work experience to speak of" (5F1). In June 2019, she told Dr. Mashburn that, "I wasn't allowed to work in Iran by my husband and in Turkey I did not have right" (13F1). Conversely, in April 2014, she told Dr. Dees that she had a "hair dresser" certificate in Iran and that she was working in Iran as a hairdresser (1F2). Additionally in September 2015, she told Dr. Ankuta that she worked as a cosmetologist for three years until she had a baby (3F2)."

AR 703-04.

In conclusion, the Court is unpersuaded by Plaintiff's assessment of the ALJ's treatment of Smith and Sengchannavong's opinions, and concurs with the Commissioner that the measure of specific and legitimate reasons the ALJ provided to reject these contradicted opinions renders any error harmless. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

II. <u>Gerald Cavenee, PhD; Kathleen Andersen, MD; Anya Zimberoff, PsyD; and Lakew Adnew, DNP.</u>

Next, Plaintiff argues the ALJ erred in assessing the opinions of Gerald Cavenee, PhD (Cavenee), Kathleen Andersen, MD (Anderson), Anya Zimberoff, PsyD (Zimberoff), and Nurse Practitioner Lakew Adnew (Adnew). Dkt. 13 at 12-18.

In February 2016, Cavanee, a DSHS examiner, opined that Plaintiff had marked limitations in multiple mental domains including her ability to complete a normal workday/workweek. AR 711.

In March 2020, Andersen, a consultative examiner, opined that Plaintiff would likely have marked difficulties focusing on tasks, completing tasks in a timely fashion, and interacting consistently and appropriately with others in a work setting. *Id*.

In January 2019, Zimberoff, opined that Plaintiff was limited to sedentary work and that she could work 10 hours or less per week due to trouble interacting productively with clients, coworkers, or bosses, her emotional reactivity, and frequent panic attacks. *Id*. Zimberoff went on to opine (in March 2020 and May 2021) that Plaintiff could not even manage part-time work due to back pain and psychiatric disabilities. *Id*.

Finally, in July 2019 Lakew, a DSHS examiner, opined that Plaintiff had marked limitations in multiple mental domains including her ability to complete a normal workday/workweek. *Id*.

The ALJ found most of the mental functioning limitations expressed in these opinions to be conflict with Plaintiff's benign presentation during the majority of her clinical visits[7] wherein she was usually described as cooperative, in no acute distress, presenting a normal mood, appropriate affect, full orientation, and exhibiting appropriate concentration, intact memory, clear speech, logical thought process, normal perception, normal thought content, average intelligence, normal insight, and normal judgment. AR 711. In addition, Plaintiff typically achieved near perfect scores on mental status testing.[8] *Id*.

The ALJ next found these opinions all failed to take into account that Plaintiff's symptoms correlated with situational stressors; in particular a tumultuous relationship with her daughter, who lived with a foster family as a result. AR 711. They also all appeared to credit Plaintiff's self-reports, which, as already discussed, the ALJ found to be unreliable due to "disability conviction, symptom magnification, and other discrepancies." AR 712.

As with Smith and Sengchannavong's opinions regarding Plaintiff's physical limitations, the ALJ noted that these mental functioning opinions were likewise in conflict with Plaintiff's

---

[7] The ALJ noted that Andersen observed Plaintiff acting agitated and emotionally distressed throughout the interview, asking to leave the office door open because she could not breath. AR 713. The ALJ found Plaintiff's presentation this day "stands in stark contrast to her typical benign presentation during routine appointments with treating providers." *Id*.

[8] The ALJ found that Adnew did not appear to have administered any formal testing. "For instance, in explaining why [Plaintiff's] concentration was abnormal, he merely stated that [she] 'loses concentration because of distractibility and anxiety' [but did not] cite to any actual results …." AR 713.

ability to complete the cosmetology program at the Gene Juarez Academy "from a mental standpoint". AR 712. The ALJ explained her reasoning on this point as follows:

> … [Plaintiff] had to satisfactorily carry out the demands from her customers and to interact appropriately with fellow students, instructors, and clients. It seems somewhat inconceivable that someone with the longstanding marked, severe, and disabling cognitive, social, and mental limitations assessed by [Zimberoff, Cavanee, and Andersen] would even consider enrolling in such an intensive program to pursue a profession that the vocational expert described as skilled, with a SVP of 6, and that would require her to have frequent interaction with people. It seems even more inconceivable that the [Plaintiff] was able to successfully graduate from the program and to pass the state board examinations to obtain her cosmetologist license.

*Id*. The ALJ also once again noted that many of Plaintiff's other accomplishments during the relevant period were inconsistent with the mental limitations assessed by Zimberoff,[9] Cavanee, and Andersen because traveling to Iran, for instance, "required [Plaintiff] to check in at the airport, stand in a security line, go through customs, and sit on a plane with strangers surrounding her for many hours …." AR 712.

Plaintiff elects to focus on Cavenee's opinion in her objection to the ALJ's reconciliation of the mental limitation evidence. First, Plaintiff reasserts her claim that this Court's earlier remand order precludes the use of Plaintiff's activities to discredit the mental limitations assessed by Cavenee. Dkt. 13 at 12. For the reasons discussed, *supra*, and because the ALJ is entitled to draw inferences "logically flowing from the evidence" this argument is unpersuasive. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Next, Plaintiff claims the ALJ erred in her determination that Cavanee's opinion was inconsistent with her "benign presentation during appointments". Dkt. 13 at 11. The ALJ's discussion on this point states:

---

[9] The ALJ also noted that Zimberoff did not administer any formal mental status testing. AR 711.

> **The claimant's mental allegations are not fully consistent with her benign presentation during appointments. While she has signs of depression, anxiety, and irritability at times, providers have typically observed that she is in no acute distress** (See e.g., 6F6, 17, 42, 42, 75, 111, 122, 133; 8F23, 29, 40, 49; 6F17, 42, 75, 122; 8F49; 10F13; 12F11; 15F30; 24F37, 83, 105, 213) **and that she has normal/cooperative behavior** (See e.g., 8F6; 10F18, 30, 35; 15F18, 23, 35, 47, 52; 17F10; 18F10; 24F6, 11, 130, 177, 205, 218, 230, 234, 253, 258, 263, 267; 25F2, 6, 9, 12, 15, 18, 71), **normal mood** (See e.g., 6F133; 10F13, 25; 15F11, 30, 42; 16F14; 24F7, 11, 38, 48, 53, 83, 88, 97, 109, 112, 115, 119, 183, 194, 213, 225, 290; 25F12, 15, 48, 51, 54, 60, 82, 88, 100, 130, 140, 143, 146, 149), **appropriate affect** (See e.g., 6F21, 42, 133; 10F13, 25; 15F11, 30, 42; 16F14; 24F38, 48, 83, 88, 109, 183, 213, 225, 290; 25F12, 15, 48, 51, 54, 60, 82, 88, 100, 130, 140, 143, 146, 149), **full orientation** (See e.g., 6F85, 95; 8F23, 40, 49; 12F11; 25F3, 6, 9, 12, 15, 18, 34, 45, 51, 54, 57, 60, 71, 75, 78, 82, 88, 97, 100, 117, 130, 140, 143, 146, 149), **age-appropriate concentration** (See e.g., 25F3, 6, 9, 12, 15, 18, 34, 45, 48, 51, 54, 57, 60, 71, 75, 78, 88, 97, 100, 117, 130, 136, 140, 143, 146, 149), **intact memory** (See e.g., 25F2, 6, 9, 12, 15, 18, 31, 34, 45, 48, 51, 54, 57, 60, 71, 75, 78, 82, 85, 88, 97, 100, 117, 130, 136, 140, 143, 146, 149), **clear speech, logical thought process, normal perception, normal thought content, average intelligence, normal insight, and normal judgment** (See e.g., 24F7, 11, 48, 53, 88, 97, 109, 112, 115, 119, 194). **The claimant's relatively unremarkable presentation does not corroborate her description of marked/severe/disabling mental dysfunction.**

AR 700-01 (emphasis added for readability).

Notwithstanding the astounding amount of evidence the ALJ relies upon here, Plaintiff asks the Court to defer to other evidence in the record and reach the opposite conclusion. Dkt. 13 at 12. However, "Where evidence is susceptible to more than one rational interpretation it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.").

Third, Plaintiff argues it was improper to discredit Cavenee's opinion on the basis that Plaintiff's mental health struggles were "situational" because they still caused disabling limitations. Dkt. 13 at 12; AR 701-02. However, the law states that situational stressors are not disabling because they do not meet the durational requirement to establish disability. *See* 20

C.F.R. § 416.909 (noting 12-month durational requirement); s*ee also Chesler v. Colvin*, 649 F. App'x 631, 632 (9th Cir. 2016) (unpublished) (symptom testimony properly rejected in part because "the record support[ed] the ALJ' s conclusion that [plaintiff's] mental health symptoms were situational").

Fourth, Plaintiff insists her normal cognitive functioning is not relevant to Cavanee's assessment of "marked limitation to the ability to communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and complete a normal workday and workweek without interruptions from psychologically based symptoms." Dkt. 13 at 13. Yet, the ALJ found that given Cavanee's unremarkable exam findings (AR 712-13) he must have relied on Plaintiff's response to the Beck's Depression Inventory (BDI) and Beck's Anxiety Inventory (BAI) to formulate his opinion. AR 713, 409, 411-14. The ALJ is entitled to resolve conflicts in the medical evidence. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Here the ALJ's resolution was reasonable, and is not at odds with the Court's prior determination on this point, as Plaintiff repeatedly argues. Dkt. 13 at 14.

This Court previously stated it was erroneous for the ALJ to reject Cavenee by stating, "Cavenee simply parroted back what [P]laintiff told him or failed to perform a professional evaluation using the normal tools applied by a psychologist." AR 818. Conversely, the ALJ in the case at bar explained, in essence, that since the BDI and BAI tests both measure a person's subjective interpretation of their own symptoms,[10] and none of Cavenee's other tests supported his limitations, the data used to formulate Cavenee's opinion was unreliable. *See*, *e.g.*, *Broyles v. Berryhill*, No. 2:17-CV-00279-TLF, 2017 WL 6350534, at *6 (W.D. Wash. Dec. 13, 2017)

---

[10] Notably, Anderson attributed Plaintiff's focus and task completion limitations to subjective complaints, including low energy, fatiguability, and preoccupation with internal emotional stress. AR 1354.

(noting BDI and BAI "reflect the patient's subjective interpretation of his or her symptoms …"). This was yet another specific and legitimate reason to discredit Cavenee's opinion.

The remaining arguments in Plaintiff's opening brief relating to Anderson, Zimberoff, and Adnew (Dkt. 13 at 15-18) all fail because those opinions rest upon Plaintiff's indisputably unreliable subjective reporting.

In sum, this Court finds the ALJ set forth a detailed and thorough summary of the facts and conflicting clinical evidence, stated her interpretation thereof, and provided specific and legitimate (if not clear and convincing) reasons, supported by substantial evidence, for her resolution and disposition.

## CONCLUSION

For the foregoing reasons the Court hereby affirms the Commissioner's decision denying benefits.

Dated this 21stday of July, 2022.

David W. Christel
United States Magistrate Judge